In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00025-CV
_____

IN THE INTEREST OF A.H.

On Appeal from the 88th District Court
Hardin County, Texas
Trial Cause No. 59009

**MEMORANDUM OPINION**

Appellant, L.H. (Father), appeals the trial court's order terminating his parental rights to A.H.[1] Father argues that the trial court erred when it (1) initially ordered the removal of A.H. without, among other factors, showing an urgent need or that A.H.'s physical health was in danger; (2) when it terminated his parent-child relationship based on his failure to comply with the service plan, and (3) determined

---

[1] We identify minors in appeals in parental-rights termination cases by using an alias to protect the minor's identity and all members of the child's family. See Tex. R. App. P. 9.8(a), (b).

that terminating his parent-child relationship was in the best interest of A.H. We affirm the trial court's judgment.

## Burden of Proof and Standards of Review

Parental rights can be terminated upon proof by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Family Code and termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West Supp. 2018); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001(b) (West Supp. 2018); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014). This is an intermediate standard and falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard in criminal proceedings. *State v. Addingto*n, 588 S.W.2d 569, 570 (Tex. 1979); *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied). Therefore, the proof must be more than merely the greater weight of the credible evidence but need not

be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570. This heightened burden of proof results in a heightened standard of review. *In re J.F.C.*, 96 S.W.3d at 265–66.

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d at 344 (quoting *In re J.F.C.*, 96 S.W.3d at 266). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

In reviewing the factual sufficiency of the evidence in a parental termination case, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. We must determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or

3

conviction, then the evidence is factually insufficient." *Id*. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is "'the sole arbiter when assessing the credibility and demeanor of witnesses.'" *Id*. at 109 (quoting *In re J.L.*, 163 S.W.3d at 86–87).

## Background

The record shows that A.H. was eight years old and living with her mother[2] (Mother), when the Department of Family and Protective Services (the Department) first became involved in this case. A.H. was removed from her mother's care in August 2018, due to Mother's drug use and erratic behavior. Father was not living with A.H. when the removal occurred. Department Caseworker Boyd testified that at the time of A.H.'s removal, Father was the non-offending parent and not the reason for the removal by the Department. After A.H. was removed from Mother's care, Father was contacted by the Department and was provided a service plan for reunification with the child. The service plan was created, in part, to address Father's mental health issues and drug usage. Father admitted he was aware of Mother's

---

[2] The trial court also terminated the parental rights of Mother to A.H. and her older sibling, who is unrelated to Father. Mother does not appeal the termination, and therefore, we discuss the facts as to Mother only where necessary for our review regarding Father's appeal.

4

behavior and drug usage, and he was aware the child was living with Mother in that environment. The Department's conditions for reunification with the child required Father to complete a service plan. The record shows numerous violations of the service plan by Father, and Boyd testified that at the time of the trial in January 2019, Father was noncompliant with the service plan.

Boyd detailed several areas of the service plan that Father failed to abide by or complete. Boyd stated that initially Father made significant contact with the Department and attempted to complete his service plan. Boyd testified that the Department was concerned about Father's drug addictions and set out requirements in the service plan for Father, including outpatient therapy and random drug testing, in an attempt to address his drug usage. Father did not complete outpatient services as required by the service plan to address his drug usage. In addition, Father's service plan required that he have a negative drug test to visit A.H. While Father had a few negative drug tests, Father tested positive more than once for illegal narcotics, including methamphetamine and cocaine, resulting in the suspension of his visitations. After Father tested positive for cocaine use in September 2018, the Department requested he submit to another drug test in October, and Father failed to appear for testing. Boyd stated that she had recently spoken to Father, and he

admitted to using methamphetamines in November and failed to submit to a drug test before trial.

Boyd stated that Father is bipolar, and the service plan required him to address his mental health. In a conversation with Boyd, Father admitted that he was not "taking care" of his mental health, including taking his medication. Boyd expressed concerns with Father's unstable home life and infrequent communication with the Department. During the pendency of this case, Father moved to Amarillo to live with Mother's sister-in-law, a person, according to Boyd, who had been accused of sexual abuse by Mother's other child. Boyd stated that in October 2018, contact with Father became very erratic, and it was difficult to maintain communication with him. Any contact was often hindered by the fact that Father changed phone numbers frequently. In November 2018, Father contacted a caseworker in Amarillo and started to work on his service plan when he was arrested and transferred to Jefferson County. According to Boyd, when Father was released from Jefferson County, he returned to Amarillo and was "unsuccessfully discharged for his drug counseling" while trying to complete his outpatient treatment.

Boyd stated that Father loves A.H. and "does want his daughter back" even though he makes "bad decisions on his drug use[.]" Boyd testified that she believed Father's rights should be terminated because Father's nomadic lifestyle would not

6

provide A.H. with a stable home life, Father failed to comply with his medications and treatment for his mental health, Father's poor decision making could place A.H. in potentially harmful relationships, and Father cannot "maintain a lifestyle that doesn't put [A.H.] in harm's way of drug use."

Father did not appear at trial but was represented by trial counsel. Boyd told the trial court that she stressed to Father the importance of appearing for trial because his parental rights could be terminated, and Father told her he "works…odd end jobs and he just can't miss work[.]" After a bench trial, the trial court signed an order terminating Father's parental rights to A.H. Father timely filed this appeal.

**Issue One**

In his first issue, Father argues that the trial court erred when it initially ordered the removal of the child because there was not legally or factually sufficient evidence to support the removal. Father argues that under section 262.105 of the Texas Family Code, there had to be evidence that

> (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child; (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and (3) reasonable efforts have been made

7

to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

*See* Tex. Fam. Code Ann. § 262.105(b)(2)(A)–(C) (West Supp. 2018).

Father disputes the circumstances that led to the trial court ordering the removal of A.H. in February of 2018 and contends that "the Department did not adhere to the removal statute in that the Department did not make reasonable efforts for the child to not be removed." On February 9, 2018, the trial court entered a temporary order authorizing the emergency removal of A.H. In January 2019, the trial court entered a final order terminating Father's and Mother's parental rights as to A.H. "[A] temporary order is superseded by entry of a final order of termination, rendering moot any complaint about the temporary order." *In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.) (citations omitted); *see also In re K.P.,* No. 09-13-00404-CV, 2014 WL 4105067, at *13 (Tex. App.—Beaumont Aug. 21, 2014, no pet.) (mem. op.) (citations omitted) (holding that a parent's complaint about the temporary order authorizing the removal of the children was moot because it was superseded by the final order.). Father's complaints regarding the temporary order are moot. We overrule Father's first issue.

### Issue Two

In his second issue, Father contends that the evidence is legally and factually insufficient to support termination under section 161.001(b)(1)(O). *See* Tex. Fam.

Code Ann. § 161.001(b)(1)(O). In terminating Father's parent-child relationship, the trial court found that Father

> failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

For the reasons we discuss below, we conclude the record contains clear and convincing evidence to support the trial court's finding that the Father failed to comply with the provisions of its order that specifically established the actions necessary for the Father to obtain the return of A.H. *See id.*

> Generally speaking, Texas courts have taken a rather strict approach to subsection (O)'s application. Subsection (O) looks only for a parent's failure to comply with a court order, without reference to quantity of failure or degree of compliance. It does not provide a means of evaluating partial or substantial compliance with a plan. Subsection (O) also does not make a provision for excuses for the parent's failure to comply with the family service plan.

*In re D.N.*, 405 S.W.3d 863, 877 (Tex. App.—Amarillo 2013, no pet.) (internal quotations and citations omitted). Subsection O provides that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has failed to comply with his court ordered terms and conditions deemed necessary for the reunification of his child. Tex. Fam. Code Ann. § 161.001(b)(1)(O). "Subsection O may operate as a ground for termination when a

9

parent from whom children are not physically removed fails to comply with court-ordered services." *In re K.S.*, No. 09-14-00222-CV, 2014 WL 4755500, at \*5 (Tex. App.—Beaumont Sept. 25, 2014, pet. denied) (mem. op.) (citation omitted).

Father argues that "legally and factually sufficient evidence was not presented at the time of trial to establish by clear and convincing evidence that [Father] failed to comply with the provisions of a court order[.]" More specifically, Father complains because his service plan was not admitted at trial, the evidence presented regarding his compliance with the service plan was not sufficient to establish that he violated the service plan. Father states that there was no evidence presented at trial that "[the caseworker] had gone over the plan of service with [Father] and what efforts were made for him to understand what tasks and services were needed for reunification to be necessary." We are not persuaded by Father's argument.

The clerk's record contains the temporary order which required Father to "comply with each requirement set out in the Department's original, or any amended, service plan[.]" Father's service plan was also filed as part of the clerk's record. While Father's service plan was not admitted into evidence at trial, we presume the trial court took judicial notice of its file and contents, including the copy of Father's service plan filed with the trial court. *See In re J.R.*, No. 02-18-001317-CV, 2019 WL 237740, at \*9 n.16 (Tex. App.—Fort Worth Jan. 17, 2019, pet. denied)

(mem. op.) ( "[A]though the family service plan was not admitted into evidence during trial, we may presume that the trial court took judicial notice of the family service plan."); *see also In re B.L.H.*, No. 14-18-00087-CV, 2018 WL 3385119, at *7 (Tex. App.—Houston [14th Dist.] July 12, 2018, no pet.) (mem. op.) (quoting *In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding that an appellate court will presume that a trial court "judicially know[s] what has previously taken place in the case tried before it, and the parties are not required to prove facts that the trial court judicially knows"). In addition, there was extensive testimony by Father's caseworker about the requirements of the service plan and her conversations with Father regarding his service plan. *See In re M.C.*, No. 02-15-00290-CV, 2016 WL 354186, at *4 n.8 (Tex. App.—Fort Worth Jan. 28, 2016, no pet.) (mem. op.) (testimony of a mother's service plan was sufficient when "discussed at length" at trial in absence of the service plan being admitted at trial); *see also In re A.A.F.G.*, No. 04-09-00277-CV, 2009 WL 4981325, at *3 n.4 (Tex. App.—San Antonio Dec. 23, 2009, no pet.) (mem. op.) (stating that although the family service plan was not admitted at trial, evidence of the service plan was "presented by the Department delineating several requirements set forth in the plan").

Father's service plan was filed with the District Clerk. The service plan instructed Father, among other requirements, to attend outpatient therapy to address his drug use, maintain his mental health, receive services related to addressing his mental health, provide a stable, drug free home, and test negative for narcotics to have visitation with his daughter. Boyd testified that the Department had many conversations with Father about his service plan, and Father was aware of his service plan and its requirements. While Father initially maintained contact with the Department, eventually his communication with the Department became inconsistent. Boyd testified that Father did attempt to attend some outpatient therapy, but ultimately did not complete or failed the required therapy.

Evidence shows that during the pendency of this case, Father moved to Amarillo, cohabitated with a person accused of sexual abuse, and failed to complete his service plan requirements while in Amarillo. Father also failed to properly take his medications and complete the required treatment for his mental health. Finally, Boyd testified that although Father had some visitation with A.H., his visits were suspended because he tested positive for cocaine and methamphetamine on two separate occasions, and Father admitted to her that he had as recently as November 2018 "used methamphetamines[.]" As of the date of trial, Father's visits had not been reinstated because Father failed to appear for required drug testing. There was

12

extensive and detailed testimony provided by the caseworker regarding Father's requirements, Father's understanding of the requirements, and his subsequent failure to complete his service plan, and therefore, we hold that there was sufficient evidence presented for the trier of fact to reasonably find by clear and convincing evidence that Father failed to comply and complete his service plan.

Father also alleges that subsection (O) requires evidence that a child was initially removed for abuse and neglect. *See* Tex. Fam. Code. Ann. § 161.001(b)(1)(O). Father argues that there was insufficient evidence presented at trial to prove by clear and convincing evidence that A.H. was removed from the parent based on neglect or abuse of that child. Father contends that because he was the non-offending parent and because his actions did not cause the removal of A.H., the Department failed to demonstrate that she was removed from his care due to "abuse and neglect" as required by 161.001(b)(1)(O). *See id.*

> [W]hile subsection O requires removal under chapter 262 for abuse or neglect, those words are used broadly. Consistent with chapter 262's removal standards, *"abuse or neglect of the child" necessarily includes the risks or threats of the environment in which the child is placed.* Part of that calculus includes the harm suffered or the danger faced by other children under the parent's care. If a parent has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been "remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child."

*In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013) (citations omitted) (emphasis added);

*In re D.R.A.,* 374 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2012, no pet.)

(citation omitted).

> Abuse and neglect are not defined in chapter 262. Nor does the chapter indicate any special or technical meaning for the terms. When terms are not defined and no technical or particular meaning is apparent from the context, we apply the statute's words according to their common usage. Thus, whether removal under the chapter was for abuse or neglect depends on the surrounding facts and circumstances and is generally determined on a case-by-case basis.

*In re S.M.R.*, 434 S.W.3d 576, 582–83 (Tex. 2014) (citations omitted). The Court

noted that Chapter 261 of the Texas Family Code provides a "nonexclusive list" of

factors to consider regarding abuse or neglect when investigating child abuse. *Id.*;

Tex. Fam. Code. Ann. § 261.001 (West Supp. 2018).

Although testimony at trial confirmed that Father was the non-offending

parent when A.H. was removed by the Department, Boyd testified that Father told

her he was aware of Mother's issues and "aware of the things that were happening[.]"

According to Boyd, Father acknowledged that his inaction concerning Mother and

subsequent failure to intervene was "part of why this case…was going on." While

Father argues that the testimony at trial failed to establish "abuse or neglect" as

required by 161.001(b)(1)(O), we disagree with Father's assessment of the

testimony.

> [S]ubsection (O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect of the child warranted the child's removal. Had the legislature intended such a requirement, it could have easily provided that conservatorship be "as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child *by the parent.*" It did not do so, and we presume it did not do so for a purpose.

*In re S.N.*, 287 S.W.3d 183, 188 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also In re K.S.*, 2014 WL 4755500, at *5 ("Subsection O may operate as a ground for termination when a parent from whom children are not physically removed fails to comply with court-ordered services."). Boyd's testimony regarding Father's acknowledgment of Mother's issues and lack of intervention illustrates that he knowingly placed A.H. in an environment that subjected her to abuse and neglect. "The purpose of terminating parental rights…is not to punish parents or deter their 'bad' conduct, but rather to protect the interests of the child." *In re A.B.*, 437 S.W.3d 498, 504 (Tex. 2014) (citing *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003)); *see also In re M.S.,* 115 S.W.3d 534, 548 (Tex. 2003). In reviewing the nonexclusive list under Chapter 261, we note that the legislature has determined that neglect includes

> the leaving of a child in a situation where the child would be exposed to a substantial risk of physical or mental harm, without arranging for necessary care for the child, and the demonstration of an intent not to return by a parent, guardian, or managing or possessory conservator of the child[.]

Tex. Fam. Code § 261.001(4)(A)(i). Therefore, it is immaterial whether abuse and neglect on the fault of Father was the reason for A.H.'s removal, because his failure

15

to provide A.H. with a safe, stable environment in light of his admittance that he was aware of Mother's issues demonstrates neglect as required under subsection (O).

Viewing the evidence in the light most favorable to the trial court's finding under subsection 161.001(b)(1)(O), we conclude that the trial court reasonably could have formed a firm belief or conviction the Father failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of A.H. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O); *see also In re T.T.,* 228 S.W.3d 312, 319–20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (affirming termination where the mother failed to comply with four of the seven requirements and the father failed to comply with three of seven requirements); *In re C.D.B.,* 218 S.W.3d 308, 311–12 (Tex. App.—Dallas 2007, no pet.) (affirming termination based on the mother's partial compliance with service plan).

Based on our review of the entire record, we further conclude the evidence is such that the trial court reasonably could have formed a firm belief or conviction about the truth of the State's allegation that the Father failed to comply with court-ordered services. *See In re C.H.,* 89 S.W.3d at 25. We, therefore, conclude that the evidence was legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(O). We overrule Father's second issue.

## Issue Three

Father argues in his third issue that terminating his rights to A.H. was not in the best interest of the child, and the trial court erred when it terminated his parental rights. Section 161.001 requires, in addition to a predicate ground, that the Department prove termination of parental rights is in the best interest of the child. Tex. Fam. Code. Ann. § 161.001(b)(2). In his third issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the child.

"[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *see also* Tex. Fam. Code Ann. § 153.131(b) (West 2014). In reviewing whether termination is in a child's best interest, we consider a non-exhaustive list of factors: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the acts or

omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). We note that evidence supporting termination under the predicate grounds in section 161.001(b)(1) may also be considered as evidence regarding the best interest of the child. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citations omitted). In reviewing if it was in the best interest of a child to terminate a parent-child relationship, courts have reviewed a parent's compliance with service plans and termination under subsection O. *See In re E.C.R.*, 402 S.W.3d at 249 (citing *In re C.H.*, 89 S.W.3d at 28) ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding."); *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(O).

Testimony established that while Father complied with parts of the service plan, he failed to complete mandatory drug counseling, maintain his mental health, provide a stable home, and abstain from illegal drug use. Evidence showed that Father continued to fail his mandatory drug testing, even after the Department told him he would lose visitation his with Daughter if he tested positive for narcotics. He knowingly left A.H. in the care of Mother, admitting he was aware of Mother's issues that could have endangered his child. Finally, Father has failed to demonstrate that he can provide stable housing or that he can stay away from individuals or circumstances that may endanger A.H.'s emotional or physical health. Boyd testified

that A.H. currently lives with her maternal aunt and uncle, that the needs of the child are being addressed, and that she believed it would be in the child's best interest to terminate Mother and Father's parental relationship and allow the child to be placed with the aunt and uncle. We find the evidence both legally and factually sufficient to support the trial court's finding that it was in A.H.'s best interest to terminate Father's parent-child relationship, and we overrule Father's third issue. Having overruled all of Father's issues on appeal, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on April 15, 2019
Opinion Delivered May 23, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.